(68 South. 122)

No. 20821.

NESSANS v. COLOMES.

(Oct. 19, 1914. On the Merits, March 8, 1915; Rehearing Denied April 12, 1915.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ☞351—TRANSCRIPT OF APPEAL — TIME FOR FILING—COMPUTATION.

Act No. 229 of 1910 gives to the appellant, on taking his appeal, or within three current days thereafter, the right to file with the clerk of court a written list of the portions of the record to constitute the transcript of appeal; and this time begins to run from the filing of the appeal bond.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1915–1919; Dec. Dig. ☞351.]

2. APPEAL AND ERROR ☞608 — DEFECTIVE TRANSCRIPT—DISMISSAL.

When the transcript has been prepared in accordance with act No. 229 of 1910, the appeal will not be dismissed on the ground of the transcript being defective.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2673–2684; Dec. Dig. ☞608.]

3. APPEAL AND ERROR ☞608—TRANSCRIPT—INDEX—ORIGINAL DOCUMENTS.

Rule 1, paragraph 6, of the court (47 South. v), which provides that an alphabetical index shall be attached to and form part of each transcript, does not cover documents brought up in their original form, unless they are also copied in the transcripts. A transcript would be in better form, and be more complete, if said original documents were regularly transcribed in the three copies of the transcript filed in this court, while the original documents were made parts of one of the transcripts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2673–2684; Dec. Dig. ☞608.]

On the Merits.

4. APPEAL AND ERROR ☞1008—JUDGMENT—QUESTIONS OF FACT—AFFIRMANCE.

In a case involving issues of fraud, the opinion of the judge a quo on questions of fact, where he saw and heard the witnesses, is entitled to great weight, and his judgment, unless clearly wrong, will be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. ☞1008.]

*(Additional Syllabus by Editorial Staff.)*

5. APPEAL AND ERROR ☞351—"TAKE AN APPEAL."

To "take an appeal" is to procure or to obtain an appeal. An appeal has not been tak-en, procured, or obtained until an appeal bond has been filed, in cases where bonds are required (citing Words and Phrases, Taken).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1915–1919; Dec. Dig. ☞351.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Justine Marie Nessans, wife of Albin O. Boyer, against Honorine Jeanne Colomes, wife of C. J. Melchior. From judgment for defendant, plaintiff appeals. Affirmed.

Guion, Lambremont & Hebert, of New Orleans, for appellant. Hall, Monroe & Lemann, Charles J. Theard, and Delvaille H. Theard, all of New Orleans, for appellee.

On Motion to Dismiss Appeal.

SOMMERVILLE, J. Defendant, appellee, moves to dismiss the appeal in this case on three grounds:

[1, 5] 1. That appellant has failed to comply with the terms of Act No. 229, 1910, p. 388, which provide that:

"The appellant may, on taking his appeal, or within three current days thereafter, file with the clerk of court, a written list of the portions of the record to constitute the transcript of appeal."

The written list of the portions of the record to constitute the transcript of appeal in this case was not filed within three days after obtaining the order of appeal as suggested by appellee, but it was filed by appellant within three days after the filing of the appeal bond. This was a compliance with the law. To "take an appeal" is to procure, or to obtain, an appeal; and it is settled that an appeal has not been taken, procured, or obtained until an appeal bond has been filed, in cases where bonds are required. It has been frequently held that a case has not been appealed, conveyed, carried, or transferred to the appellate court until the appeal bond has been filed; at which time the

trial court ceases to have jurisdiction of the case. Words and Phrases, p. 6850.

[2] 2. The next ground for dismissal is that the transcript is incomplete, in that appellant has failed to move in this court that she be permitted to use a previous transcript filed here between the same parties, in conjunction with the transcript now filed by her, on or before the return day for filing the later transcript here. This is without merit. The rule of court requires that:

"Parties in interest prosecuting subsequent appeals will be permitted, upon application to this court, to use transcripts in previous appeals when such appeals are branches of the same case, omitting from their copy the portions included in preceding transcripts."

And it is not required that the motion to use the transcript previously filed should be made on or before the return day of the later transcript. A motion was made by counsel for appellant, on the first day of the term, to use said transcript.

[3] 3. The last ground urged for the dismissal of the appeal is that appellant has failed to comply with rule 1, paragraph 6 (47 South. v), of the court, which provides for an alphabetical index of the transcript. The documents referred to as not being contained in the index were, by agreement, brought up in the original; and appellant, under the act above referred to of 1910, p. 388, gave to the clerk of the district court a written list of the portions of the record to constitute the transcript of appeal, omitting the original documents before referred to. The transcript having been prepared as directed, and the statute, No. 229, further providing that when so prepared the appeal shall not be dismissed on the ground of the transcript being defective, etc., the appeal will not be dismissed. Appellee had the right, within five days, under the statute, to designate such portions of the record as she might deem necessary to complete the transcript. Other parties, or the court, may cause to be filed hereafter any omitted portion of the record in a supplemental transcript.

The motion to dismiss the appeal is denied.

## On the Merits.

LAND, J. [4] Mrs. Boyer sued, as sole heir of her deceased mother, Mrs. Marie Nessans, to annul a dation en paiement of three city lots made by the latter to her sister, Mrs. Honorine Melchior, on March 26, 1907. The grounds of nullity set up in the petition are fraud and simulation. The petition charges that Mrs. Melchior by fraudulent representation, duress, and undue influence, took advantage of Mrs. Nessans' mental unfitness due to illness, and caused her to appear before a notary public and then and there make a simulated giving in payment of the lots in question, that Mrs. Nessans never knew what documents she had signed, and never recovered her health sufficiently to be aware of her affairs from that time until the date of her death in September, 1908; that plaintiff never became aware of said fraudulent transfer until on or about December 1, 1909; that the purported consideration of said giving in payment was a pretended loan of $4,000 by Mrs. Melchior to Mrs. Nessans when she became of full age on May 16, 1891; and that at the date of said transfer said pretended debt had long since been prescribed, and was fraudulently injected in the conveyance for the purpose of concluding the plaintiff from attacking its validity.

The petition further alleges that at no time was Mrs. Nessans ever indebted unto the said Mrs. Melchior, but that the latter was indebted unto the former for money loaned.

The petition further alleged that in October, 1906, while Mrs. Nessans was in bad health and incapable of attending to her affairs, Mrs. Melchior caused her to make a notarial will, bequeathing to Mrs. Melchior the disposable portion of her estate,

and nominating Mrs. Melchior as executrix, without bond; and thereafter, when Mrs. Nessans "recovered consciousness," she revoked said will, and made another by which she instituted the plaintiff as her sole heir and legatee.

The defendant for answer specially denied the charges of undue influence, fraud, and simulation made in the petition, and averred the legality and validity of the notarial act of dation en paiement executed on March 26, 1907, and registered in the conveyance office on the same day.

There was judgment for the defendant, and the plaintiff has appealed.

In this court the defendant has pleaded the prescription of one year against plaintiff's demand.

On March 26, 1907, "Mrs. Vve Marie Nessans" appeared before a notary public and signed an act of dation en paiement, conveying the lots in question to Mrs. Melchior, for and in consideration of the sum of $4,000, loaned by her to said Mrs. Nessans about May 16, 1891, with legal interest thereon from that date, and in further consideration of the assumpsit by Mrs. Melchior of a certain mortgage for $1,400, bearing 7 per cent. interest from December 18, 1906.

On June 10, 1908, Mrs. Nessans signed a paper in which she certified that she had received from her sister, Mrs. Melchior, the sum of $1,800, "in settlement of act of sale (dation en paiement) of the two properties situated 2929 and 2931 Ursuline avenue and also rear lot facing Gayoso street."

On the same sheet of paper appears a writing purporting to have been signed by the plaintiff on the same date, reading:

"I am fully aware that my aunt Mrs. Honorine Colomes, wife of Charles J. Melchior, has fully paid the amount of eighteen hundred dollars aforesaid to my mother."

During the first trial of this case, after the production of the above documents and their verification by the oath of the defendant, counsel for the plaintiff, after consultation with her husband, consented that judgment be entered in favor of the defendant, which was done.

Plaintiff, who was not present at the trial, moved for a new trial on the ground that the document purporting to have been signed by her was a forgery. The judge a quo refused to grant a new trial, and the plaintiff thereupon appealed to this court, which reversed the judgment and remanded the cause for further proceedings.

We think that the evidence shows that Mrs. Boyer wrote and signed the certificate of June 10, 1908, on the same piece of paper, and on the same day, her mother wrote and signed the receipt for $1,800, and on the same day her mother wrote and signed the olographic will, revoking prior wills, and constituting Mrs. Boyer her sole heir and universal legatee. In 1906 Mrs. Nessans made a will leaving the disposable portion of her estate to her sister, Mrs. Melchior. In 1907, Mrs. Nessans made the dation en paiement in question to Mrs. Melchior. The will of June 10, 1908, revoked the prior will, and the two other documents of the same date show a "settlement" of all claims connected with the dation en paiement. Mrs. Nessans' receipt for the money "in settlement" is corroborated by the written declaration of Mrs. Boyer. The evidence clearly shows that in April, 1908, Mrs. Melchior mortgaged the premises in dispute to secure a loan of $1,800 for the purpose of making a settlement with Mrs. Nessans.

The fact that Mrs. Boyer did write and sign the document is directly proven by the testimony of Mrs. Melchior. Mrs. Boyer's husband recognized her handwriting and signature when the document was produced on the first trial, and was so well satisfied of its verity that he authorized the entry of judgment in favor of the defendant.

Three handwriting experts, one of whom was employed by the plaintiff, testified that the document was written and signed by Mrs. Boyer.

Besides the property in dispute, Mrs. Nessans owned 24 lots, which she had specially mortgaged to secure a loan of $1,000. This mortgage was canceled on the records on April 29, 1908. This left the 24 lots clear of incumbrances, and they so passed to Mrs. Boyer under the will of June 10, 1908.

Mrs. Melchior, on March 29, 1909, paid Mrs. Nessans' note for $1,400 with $24.50 interest, which was assumed by her in part consideration of the dation en paiement.

Mrs. Melchior also paid $1,800 to Mrs. Nessans as stated supra. Whatever sum Mrs. Nessans may have owed to Mrs. Melchior for money advanced in 1891 was an additional consideration for the conveyance of the property. Mrs. Nessans had the right to waive prescription, if she deemed proper. Such a transaction cannot be considered as simulated.

Plaintiff's attack on the mental capacity of her mother during the years 1906 and 1907 and 1908 is not sustained by the evidence. It is true that Mrs. Nessans during that period suffered from an internal cancer, but the physicians who attended her testified that the cancer did not affect her mind; and several of them, including an eminent surgeon, stated that her mind was clear, calm, and lucid. It is true that in the progress of the insidious disease Mrs. Nessans from time to time suffered from violent hemorrhages, which depleted her system to such an extent as to produce extreme physical weakness, and on occasions a condition of temporary coma. But it is equally true that Mrs. Nessans after such attacks rallied within a few days, and became capable of attending to business affairs. On this subject-matter, Dr. Matas testified as follows:

"There might have been transient conditions of the mind, but those conditions were never sufficiently strong to make the patient—to compel the patient to lose control over her idea, or over her will, except that, occasionally, she would on account of the toxic condition. In the last stages there, she would be unconscious for a little while, but, when she would be conscious, she would be thoroughly governed by her will. And during her whole illness I found her, especially as far as the transaction of business matters was concerned, perfectly clear."

Plaintiff's testimony is to the effect that her mother, during her long illness, had good common sense, but there were times when her mother "suffered so very much that her mind was really—it was weak."

Mrs. Nessans was capable of managing her own affairs. It is admitted that she was a good, honest woman, and loved her only child, the plaintiff in this case. The theory of the petition is that Mrs. Nessans did not have sufficient mental capacity to enter into the contract of dation en paiement with Mrs. Melchior. This contention having been refuted, the necessity of the case requires that plaintiff's evidence establish the fact that the mother perpetrated a fraud on her only child, whom she dearly loved.

We think that the bona fides of the dation en paiement, which is presumed, is supported by the testimony of Mrs. Melchior, which is corroborated by the settlement of June 10, 1908, made in the presence of the plaintiff. The receipt of Mrs. Nessans executed on that occasion shows that she received the sum of $1,800, more than she was entitled to under the terms of the dation en paiement. The written declaration of the plaintiff, of the same date, certifies to the payment of the said sum. On the same day, Mrs. Nessans made an olographic will instituting the plaintiff as her sole heir, and revoking a prior will in favor of Mrs. Melchior. With the light thrown on these transactions by the testimony of Mrs. Melchior, the conclusion is irresistible that the mother, daughter, and

aunt met on that occasion and made a full settlement of their differences over the dation en paiement and the prior will in favor of Mrs. Melchior.

We have read and considered the evidence, oral and documentary, adduced on the two trials of the case. It is too voluminous to be set forth in this opinion, and we have confined ourselves to a statement in general terms of the evidence bearing on the decisive issues in this case.

Our learned brother below saw and heard most of the witnesses, and his judgment on their credibility, and on their painfully conflicting testimony, is entitled to great weight with this court, especially in a case involving questions of fraud.

Judgment affirmed.

MONROE, C. J., takes no part in this decision.